## NEW YORK SUPERIOR COURT.

### THE MADISON AVENUE BAPTIST CHURCH agt. THE BAPTIST CHURCH IN OLIVER STREET.

The common law right of alienation, as well as the power conferred by the Revised Statutes upon corporations generally, to convey their real property, is restrained in its application to *religious corporations*.

The statute provides that upon the application of a religious corporation, it shall be lawful for the court to make an order for the sale of any real estate of such corporation, and to direct the application of the moneys arising therefrom. Without such an order, any sale made by a religious society is *void*.

When the purposes of a sale by such corporation are proper, and in no wise opposed by the policy or design of the statute, no court would be justified in withholding its consent, merely because the corporation had applied for permission to convey. All that the statute requires is, that the sanction of the court approving the sale shall be procured. But to enable the court to form a judgment, it must be put in possession of all the facts which furnish the reasons for the sale.

Whenever therefore a religious society has resolved to dispose of its property, and has agreed upon the terms and conditions of sale, and the application to be made of the money arising therefrom, it is in a condition to seek the sanction of the court, and such sanction may properly be of the *entire agreement*.

The *trustees* of a religious corporation are invested with the custody, care and supervisory control of all the temporalities appertaining to the church, and through them alone the corporation can act.

Where there is a direction and authority given to the trustees by the church and congregation duly called, to make application to the court for leave to convey, it makes the application as much the application of the corporation, as if each individual had signed the petition. And *it seems* that the trustees may make the application irrespective of any vote of the corporators.

Madison Avenue Baptist Church agt. The Baptist Church in Oliver street.

It is not actually necessary on a proper application for such sale and conveyance, nor is it required, that the court should direct in the order the application of the moneys arising from such sale. Nor that it should do more than sanction the arrangement by ordering the conveyance to be made.

A society becomes incorporated as a *religious,* not as a sectarian body. And the same principle which allows a majority of corporators to change their articles of faith, would authorise a majority of two societies, entertaining the same belief, to enter a valid contract to unite and form themselves into one church; such a union, formed under such a contract, is not liable to the objection that one of the corporations become extinct. Although in strictness it dissolves one corporation and is an abandonment of their distinctive separate organization, in reality it is a mere union with another congregation, holding the same tenets, conforming to the same faith, and submitting to the same governmental discipline.

*General Term, February,* 1866.

*Before* Barbour, Monell *and* Garvin, *Justices.*

The action was to recover the possession of a plot of ground on the southeasterly corner of Madison avenue and Thirty-first street, in this city. Prior to the 21st of October, 1862, the plaintiffs, a religious corporation, were the owners of the plot in question, and had erected thereon a church edifice, which they occupied as a house of worship. The complaint alleged the ownership of the plaintiffs, and the entry of the defendants. The answer, after denying all the allegations in the complaint not afterwards admitted, for a further and separate defence, set forth certain facts, which will sufficiently appear in the offers of evidence made on the trial.

The action was tried by Mr. Justice McCunn, without a jury. On the trial, the plaintiffs proved a deed to themselves of the lot in question, dated August 1st, 1859, from Catharine Vanderpool, and the possession of the defendants. The defendants then offered in evidence a petition, resolutions, consents and order thereon, annexed to and forming a part of their answer. The petition was addressed to " the supreme court," and was by " the trustees of the Madison Avenue Baptist Church." It stated, that the Madison Avenue Baptist Church was a religious incorporation, and the owner of the lot on the southeasterly corner of Madi-

son avenue and Thirty-first street, on which they had erected a church edifice and lecture room, at a cost, including the lot and an organ, of the sum of about one hundred and twenty-two thousand dollars. That their indebtedness therefor was about seventy-three thousand dollars, sixty-one thousand five hundred dollars of which was secured by mortgages upon the premises. That owing to causes set forth in the petition, they were unable to pay their liabilities, or meet the current expenses of the church. That the said Madison Avenue Baptist Church, and the Baptist church in Oliver street, also a religious incorporation, and located in Oliver street in this city, and which had contemplated disposing of its property and moving up town, had formed a plan and made arrangements for uniting said two churches into one, and had agreed upon the following terms for such union:

"First. The Madison Avenue Baptist Church is to convey and transfer all its real and personal property to the Oliver Street Baptist Church, and the members of the Madison Avenue Baptist Church are to become and be members of the Oliver Street Baptist Church; and thereupon the regular services of the united churches to be held in the house of worship owned by the Madison Avenue Baptist Church.

"Second. The trustees of the Oliver Street Baptist Church are to resign, and an election for new trustees ordered by the church and congregation united. The resignation of the present trustees to take effect when others shall have been elected.

"Third. The Oliver Street Baptist Church are then to take the necessary steps to cause its corporate name to be changed to the Madison Avenue Baptist Church.

"Fourth. The real and personal property now owned by the Madison Avenue Baptist Church, and that owned by the Oliver Street Baptist Church, upon such transfer

and union as aforesaid, is to become liable for the indebtedness of both said churches.

"Fifth.   As soon as practicable after such union shall have been perfected, and new trustees elected, a sale of the pews in the Madison Avenue Baptist Church, at their present assessed value, is to be ordered, upon the same terms and conditions as provided by the form of deed formerly adopted by the Madison Avenue Baptist Church; at which sale, the present owners of pews heretofore sold, amounting together to thirty-one thousand dollars, are to have the right to purchase a pew or pews of equal value to those heretofore purchased by them, without further payment than the amount of premiums which may be bid for choice, and are to receive a deed for the same.   And the present members of the Oliver Street Baptist Church or congregation, also, are to have the right to purchase pews to the amount of thirty-one thousand dollars, without any payment, or merely a nominal one, except the amount of premium that may be bid for choice of pews."

The petition then stated that the plan and terms for forming a union of the two churches had been agreed upon by a joint committee appointed by said churches, respectively; that such committees had reported to their respective churches the plan, arrangement and terms for the union of the two churches, and that at a public meeting of the church and congregation of the Madison Avenue Baptist Church, duly called, the report of their committee of the plan, arrangement and terms for the union of the two churches, "was adopted and approved, and the trustees of the Madison Avenue Baptist Church authorized and directed to petition the court for an order authorizing them to convey the property of the Madison Avenue Baptist Church to said Oliver Street Baptist Church, in pursuance of the plan and arrangement for the union of the said two churches on the terms above stated." The petition further stated that, at a public meeting of the

Oliver Street Baptist Church and congregation, the report of their committees of the plan, &c., of the union, was adopted and approved, and the trustees were authorized and directed to take the necessary legal steps to perfect the union of the two churches; and that, subsequently, the trustees of the Oliver Street Baptist Church had adopted a resolution pledging themselves to carry out and perfect the union of the two churches. The petition further stated that the Oliver Street Baptist Church owned property, over and above all their indebtedness, of the value of from fifty to sixty-five thousand dollars, which on the consummation of the union would become applicable to the payment of the debts and liabilities of the Madison Avenue Baptist Church. That a portion of the pew-holders of said church had consented to the transfer of the property, and that the residue of said pew-holders had approved of, and were in favor of forming the union. The petition then prayed for an order authorizing and directing the petitioners "to convey" the said premises to the Oliver Street Baptist Church. Annexed to the petition was an authenticated copy of the proceedings of the meeting of the congregation of the Madison Avenue Baptist Church, which had approved of the plan for the union, and also the consent of the pew-owners and holders. Upon such petition, the court made an order authorizing and directing the trustees of the Madison Avenue Baptist Church, to "convey" by a proper deed of conveyance, the said premises to the Oliver Street Baptist Church. The order was afterwards amended by changing the words "the Oliver Street Baptist Church," to "the Baptist Church in Oliver street."

The plaintiffs objected to the papers offered on the several grounds :

1st. As immaterial. 2d. That it appeared on the face of the papers that the proceeding was void. 3d. That it did not appear that it was authorized by a majority of the

plaintiff's corporators. 4th. That it was a petition and order simply to convey. 5th. That it purported to be made by the trustees, and not by the corporators.

The defendants then offered in evidence a deed dated October 21st, 1862, from the Madison Avenue Baptist Church to the Baptist Church in Oliver street, conveying to the latter the premises in question, for the expressed consideration of five dollars. The defendants then offered to show that under that deed they entered upon the customary religious services in the church edifice conveyed by such deed, in connection with the plaintiffs, and by their consent, and that the two congregations united in such services. The defendants further offered to show a petition and order for the change of their corporate name to the Madison Avenue Baptist Church, in pursuance of the agreement aforesaid. Also, that they had sold their church property in Oliver street, in execution of the agreement for the union of the two churches; and that all the conditions and terms of the union, as set forth in the petition, had been fully carried out and performed by the parties respectively.

To each and all of the evidences offered the plaintiffs objected. The court excluded all and each part of the evidence offered, on the ground that the same would not establish, or tend to establish, a defence. To which rejection of such evidence the defendants excepted.

In the view taken by the court, it is not necessary to state the further evidence offered on the part of the defendants and excluded on the trial. The justice rendered judgment in favor of the plaintiffs, that they recover possession of the premises, with costs.

From the judgment the defendants appealed.

WILLIAM R. MARTIN, *attorney, and*

L. B. WOODRUFF *and* WM. F. ALLEN, *of counsel for appellant.*

PIERREPONT, STANLEY & LANGDELL, *attorneys, and*
J. S. BOSWORTH *and* JAMES T. BRADY, *of counsel for respondent.*

By the court, MONELL, J. The common law right of alienation, as well as the power conferred by the Revised Statutes (2 *R. S.* 556, § 1, *sub.* 4) upon corporations generally, to convey their real property, is restrained in its application to religious corporations, by the eleventh section of the act providing for their incorporation (2 *R. L.* [1813], 212). That section provides that upon the application of a religious corporation, it shall be lawful for the court to make an order for the sale of any real estate of such corporation, and to direct the application of the moneys arising therefrom. Without such an order any sale made by a religious society is void. (*Manning agt. Moscow Presbyterian Society*, 27 *Barb.* 52.) The objections to the order in this case are four-fold:

First. That the court had the power to order only a sale.

Second. That the application for the order was made by the trustees, and not by the corporation.

Third. That the order did not direct the application of the moneys arising from the sale; and

Fourth. That the transaction produced a dissolution and abandonment of the plaintiffs' corporation, and not a continuance of it for the purposes of its organization.

The petition of the trustees does not ask for an order to sell, but for an order to convey, pursuant to an agreement previously made between the parties, and set out at length in the petition. If such agreement was a proper one, such as should receive the sanction of the court, and would conduce to the temporal and spiritual welfare of the corporation, it would seem to be of not much importance whether the application was in the one or the other form. It was contended, however, that as the court can make an

order only for the sale, the statute giving the power must have a literal compliance.

The section referred to confers no power upon religious corporations to alien its property. None was needed. The power is inherent in every corporation, which, at common law, has an unlimited authority over its property, and could alienate the same in fee, by grant or otherwise. (*Coke Litt.* 44 *a*, 300 *b*; 1 *Burr R.* 221.) And a like power is given by the Revised Statutes, before referred to. Neither does the section take away the power of alienation. It merely limits its exercise, by requiring the corporation to obtain the consent of the court, and so far only it operates as a restraint upon its alienating powers.

If the right of a religious corporation to sell its property was derived solely from the statute, and the power was limited in terms to a sale, it might be that a literal observance would be required. But where the corporation has the power to sell, independently of any statute, upon merely obtaining the sanction of the court to the sale, a substantial compliance with the spirit and intent of the section referred to should, it seems to me, be deemed sufficient. The restraint placed upon religious corporations was intended to prevent an improper alienation of their property. An unlimited power of alienation could be exercised by a corporation injuriously to the temporal interests of church societies, and the cause of the christian religion. But when the purposes of a sale are proper, and in no wise opposed by the policy or design of the statute, no court would be justified, in my opinion, in withholding its consent, merely because the corporation had applied for permission to convey.

It will be seen that the section referred to authorise the court to make an order for the "sale," and not for a sale and conveyance. A sale without a conveyance would be wholly ineffectual to pass title to real property; and the use, therefore, of the word "sale" only, in the statute,

would seem to indicate that it was intended to give to the word a signification sufficiently broad to include conveyance. An agreement to sell always implies an agreement to convey, as a necessary means of transfer to complete the sale; and an agreement to convey implies a sale agreed upon, which needs only a conveyance to consummate it. The plaintiffs agreed with the defendants "to convey and transfer" all their property. Such a contract, independently of any restraining statute, would be sufficient as a contract of sale; and under the statute, as a contract, its specific performance could have been compelled, by requiring the plaintiffs to apply to the court for its consent.

In the case of *Williamson agt. Berry* (8 *How.* [*U. S.*] 495), to which we were referred, Mr. Justice WAYNE gives as a definition of the word "sale," a "contract to give and pass rights of property for money," and he held that an authority given to Clarke by the legislature "to sell and convey," did not authorise a conveyance in payment of his debts. If that learned justice intended so contracted a signification to the word as he expresses, it would render void all transfers of property not founded on a money consideration, which it cannot be believed he designed. As a decision, however, it is wholly unsatisfactory, and must be considered as overruled by *De Ruyter agt. St. Peter's Church* (3 *Coms.* 238), where an assignment by a church of its property for the payment of its debts was upheld.

All that the statute requires is, that the sanction of the court approving the sale shall be procured. But to enable the court to form a judgment, it must be put in possession of all the facts which furnish the reasons for the sale. In the *Dutch Church in Garden street agt. Mott* (7 *Paige,* 77), the late Chancellor says: "As the law of patronage has never been extended to this state, and was inconsistent with the spirit of our institutions, it became necessary to vest in some tribunal the power of sanctioning alienation of church property," and therefore the intention

of the act of 1816 (which was the same as the act of 1813) was to give to religious corporations an unlimited power to convey any real property held by them in trust for the corporators; provided, the previous consent of the court to such alienation was obtained. And *in Matter of Reformed Dutch Church in Saugerties* (16 *Barb.* 237), Judge HARRIS says: " It was deemed necessary for the protection of those who are the real owners of such property to require the sanction of that officer before the corporation could make a valid conveyance." . But the Chancellor could only ratify or veto the sale.

As I have already stated, if the reasons are good and the object proper, it is of small importance in what form the sanction of the court is obtained; and where such reasons and object, and the purpose to which the consideration for the sale is proposed to be applied, are fully stated in the petition, and the court thereupon ratifies the agreement, and directs a conveyance in pursuance of its terms, and in fulfillment of it, it does not seem to me that any provision of law would be violated. It is not uncommon in applications by religious societies desiring to sell their church property, to state the proposed application of the moneys arising therefrom. It was done in *De Ruyter* agt. *St. Peter's Church, supra*. In that case, the corporation being insolvent (*see S. C.*, 3 *Barb.*, *Ch. R.*, 120), the trustees resolved, to convey all its property to trustees for the payment of its debts. Their petition, presented to the vice-chancellor, was for an order permitting the corporation to sell and convey its property to trustees, " in trust as aforesaid ;" and an order was made according to the prayer of the petition. Not only the reasons for the sale, but also the proposed manner of applying the proceeds, were stated in the petition, and the chancellor says, it was a matter of discretion with the vice-chancellor, whether he would make the order or withhold his consent. The practice of negotiating and agreeing upon terms first, and then laying the

agreement before the court for its sanction, is approved in *Bowen* agt. *Irish Presb'y Church* (6 *Bosw.*, 245). Indeed, it would be singular, if it was required that the contract of sale should succeed and not precede the allowance of the court. Whenever, therefore, a religious society has resolved to dispose of its property, and has agreed upon the terms and conditions of sale, and the application to be made of the money arising therefrom, it is in a condition to seek the sanction of the court, and such sanction may properly be of the entire agreement.

The next objection is that the application was not made by the corporation, but by the trustees. The petition states that, at a meeting of the church and congregation duly called, the trustees were authorized and directed to make application for leave to convey. A religious corporation consists of the persons who have been stated attendants upon divine worship for one year, and have contributed to the support of the church, according to its usages and customs. Such persons are also the corporators. All corporations act through and by their officers, or other constituted agencies to which the corporators have delegated the power to act; and especially are the trustees of religious corporations invested with the custody, care and supervisory control of all the temporalities appertaining to the church, and through them alone the corporation can act. The direction and authority given to the trustees made the application as much the application of the corporators, as if each individual had signed the petition. The statute does not prescribe any form, nor does it, in terms, require that a majority of the corporators should unite. No corporation, however, can act unless its action is invoked by a majority of the corporators. This rule is applicable to all bodies, unless a less number are given the power by some special provision of law. The statute being silent, the court will intend, for the purpose of acquiring jurisdiction, that a sufficient number have authorized the

application. But the cases of *Matter of St. Ann's Church* (23 *How. Pr. R.*, 285); and *Matter of Baptist Society of Canaan* (20 *How. Pr. R.*, 324), go farther, and hold that the trustees may make the application irrespective of any vote of the corporators. The case of *Wyatt* agt. *Bensen* (23 *Barb.*, 327), cited by the plaintiff's counsel, is not opposed. The application in that case was by a majority of the trustees; and it appeared on the part of those opposing the application, that a large majority of the corporators were not favorable to it. If the opposition had not appeared the learned judge, who gave the opinion, says : "It might be assumed that the trustees represented the views of the corporators in making the application." But the order in that case being *in fieri*, the court revoked its sanction, on the ground that a majority of the corporators were opposed to the sale.

All difficulty in the way of the case before us, is removed by the statements made in the petition, and the papers annexed to it. It says there were sixty-seven pew-owners or pew-holders, of whom forty-one or nearly two-thirds had signed a written consent and request, that an order be made directing the trustees to convey. It further states, that all the other pew-owners and pew-holders were in favor, and approved of forming the union of the two churches. Besides, the proceedings of a public meeting of the church and congregation, called pursuant to public notice, which are annexed to the petition, show an express authority from the corporators to the trustees. There was, therefore, an abundance of evidence before the court to show that the application had the approval of all the corporators. The third objection is, that the order does not direct the application of the moneys arising from the sale. The consideration for the sale was not the nominal sum of five dollars named in the deed.

The agreement set out in the petition, by which the defendants agreed to assume and pay the plaintiff's debts,

amounting to seventy-three thousand dollars—to unite with the plaintiffs in forming one church organization—to adopt the plaintiff's corporate name—to sell their property in Oliver street—to cause the resignations of its own trustees, and to provide for the selection of new trustees by the united church and congregation, constitutes the real and only consideration for the transfer; and the court was asked to give its sanction to that agreement, and nothing more. Judge DENIO says, in *Wheaton* v. *Gates* (18 *N. Y. R.*, 375), that "as to the disposition of the proceeds, the court has no power to originate any scheme, or even to execute any enterprise determined on by the corporation, but only to allow or disallow the application of the moneys to such purposes as the corporation shall represent to be most for the interests of the society." The allowance of the court to the application proposed by the trustees in this case, is sufficiently shown by the order it made; and, it appears to me, it could not have been shown in a more satisfactory or effectual manner. But even if the order should have been more specific, it cannot affect the title made under it. The court having jurisdiction, any mere irregularity or insufficiency in the proceedings subsequent to the petition was amendable, and would probably be cured by the action of the parties under it. Besides, the order allowing the sale might have been made separately from the order directing the application of the proceeds. *In Matter of Brick Presbyterian Church* (3 *Edw.*, 155), the vice-chancellor made a provisional order, allowing a sale to be made, "if a proper site for a new church could be obtained." I do not think, in this case, that it was required that the order should do more than sanction the arrangement, by ordering the conveyance to be made. That was a substantial compliance with the statute. The remaining objection is one of more difficulty. It is contended that by the consummation of the sale of the plaintiffs' property, their corporation became extinct, and that

such result being opposed by the policy of the statute, rendered the whole transaction void. The object of the statute was to prevent improper dispositions of church property. The framers of the law must have feared that cases might arise where it would be proper to put a restraint upon the power of alienation, and they have, most wisely, I think, given to the court the discretion to sanction, or withhold its sanction in all cases. In any given case, the propriety of a sale must be determined by the court. If the application comes up in proper form, with the facts necessary to give jurisdiction, the court alone is authorised to judge of the expediency of the sale; and the duty to direct the application of money arising therefrom, in a measure, controls and prevents any improper exercise of the discretion of the court.

But it is said the transaction between these parties, although sanctioned by the court, was not such a transaction as should be sustained. Let us see what it was. The Madison Avenue Baptist Church had purchased lots, and erected thereon a church edifice, at the cost of one hundred and twenty-two thousand dollars, and were in debt to the amount of seventy-three thousand dollars. Owing to derangements of business, and of the finances of the country, and the existence of the war (1862), they had failed to realize from subscriptions, or the sale of pews, what they had anticipated, and were, therefore, unable to pay their liabilities, or meet the current expenses of the church. In this exigency it was found that the Baptist church in Oliver street had resolved to sell their church property and remove up town. It was also found that the church in Oliver street would have a surplus in money, on a sale of their property, of about sixty-five thousand dollars. The church in Madison avenue sought the union, and it was finally agreed, with the consent of all the corporators of each society, that the Oliver Street Church should take title to the church in Madison avenue, pay the

debts and assume its corporate title; and thenceforward the two societies and congregations worship as one congregation in the same edifice.

It is quite clear that the arrangement was mutually advantageous, each party receiving a substantial benefit. The plaintiffs were at once relieved from the pressure of a heavily impending debt; and, in this aspect, the sale may be regarded as a *quasi* transfer of their property in payment of their debts, within the principle of *De Ruyter* agt. *St. Peter's Church, sup.* Although, in strictness, it dissolved the plaintiffs' corporation, and was an abandonment of their distinctive separate organization, in reality it was a mere union with another congregation, holding the same tenets, conforming to the same faith, and submitting to the same governmental discipline.

A corporation aggregate has perpetual succession in its trustees or officers, vested with its temporal concerns. The officers may cease to act, but the succession continues. The change in this case was nominal rather than real. The plaintiffs' corporators became corporators in the transformed church, by force of the agreement; they were eligible to office, and entitled to vote. In short, the agreement guaranteed to all the corporators of the Madison Avenue Church the rights, privileges and powers in the united church, which they had before possessed and enjoyed in their separate organization.

I am not prepared to say that if the sale had operated to extinguish the plaintiffs' corporation as a religious denomination, it would be freed from exception. Yet such a sale, with a distribution of the proceeds among all the corporators, with the consent of all having an interest in the subject, would seem to be within the discretion of the court to sanction and approve. (*Matter of Church in Saugerties, sup.*) The mere denominational character of a church may be changed by its corporators at pleasure. (*First Baptist Church* agt. *Wetherel*, 3 *Paige* 296; *Miller*

agt. *Gable*, 2 *Denio* 492; *Robertson* agt. *Bullions*, 1 *Kern.* 242; *Parish of Belport* agt. *Tooker*, 29 *Barb.* 256.) In the last case the form of church government was changed from a Congregational church to an organization in connection with the Presbyterian body.

The idea that the denominational or sectarian character of a church enters as an element into the act of incorporation, is exploded in the cases last cited. A society becomes incorporated as a religious, not as a sectarian body (*Petty* agt. *Tooker*, 21 *N. Y. R.* 267); and the same principle which allows a majority of corporators to change the articles of faith would seem to authorise a majority of two societies, entertaining the same belief, to unite and form themselves into one church. And such a union, in my judgment, cannot be improper. An example of such a union is found in the case of *Cammeyer* agt. *The United German Lutheran Church* (2 *Sandf. Ch. R.* 186), where one church society transferred all its real and personal property to another church society, and the united churches thereafter worshiped as one congregation. It is true of that case that neither of the societies were incorporated at the time of the union; nevertheless, the case is an apt illustration of the propriety, as it is a pointed instance of such a union.

I am not aware that any court has assumed to have jurisdiction over the spiritual body which constitutes the church, as distinguished from the temporal body, which consists of its members and is represented by its trustees. Over such spiritual body, legal or temporal tribunals do not profess to have any control; hence, all questions concerning the faith or practices of the church and its members, belong to the church judicatories in their connection; while on the other hand, such ecclesiastical judicatories cannot interfere with the temporal concerns of the society with which the church members are united. I may state in this connection, that the society long in existence, insti-

tuted to aid feeble churches, has, where it was practicable, recommended a union of weak churches, upon the conviction from long observation and experience, that the strength acquired by the union would add to the efficiency and usefulness of both.

The doctrine that contracts of corporations, which are *ultra vires*, are void, does not receive favor with the courts. Where parties have contracted in good faith with a corporation, and have executed their contract, and the corporation has received and accepted the benefits, it is not to be tolerated that they can be permitted to seek exemption, on the ground that they had no power to contract. (*Fuller* agt. *Heath*, 11 *Wend.* 477 ; *State of Indiana* agt. *Warren*, 6 *Hill.*, 33 ; *Sherman* agt. *N. Y. Central R. R. Co.*, *Barb.* 239.) The only exceptions to this rule are those cases where corporations are prohibited by some express provision of law, or are required to contract in some prescribed form. (*Brady* agt. *The Mayor, &c., of N. Y.*, 20 *N. Y. R.*, 312 ; *Bonesteel* agt. *The Same*, 22 *Id.*, 168.) In this view, it seems plain that the plaintiffs could have been compelled specifically to perform their contract, by procuring an order to convey, and by transferring the title to their property to the defendants. (*Fry on Spec. Perf.*, 233.) The case of *Wheaton* agt. *Gates*, before referred to, seems to have been regarded by the learned justice at special term as controlling. It was also insisted by the respondent's counsel that it was conclusive. It is proper to say of that case, at the outset, that it was an action brought by a corporator for the purpose of having declared null and void an order of a county court, giving its sanction to a sale of church property. In that respect it differs from this case, which is an attempt to attack collaterally the validity of a similar order, which, in my opinion, can be done only by a direct action. (*Clark* agt. *Van Surlay*, 15 *Wend.*, 436.) The petition in the case cited was verified by four only, of six trustees, and had annexed to it the concurrence of a few only of the members

of the society. The prayer was that the church might be sold, and the proceeds, after paying debts, might be divided among the persons who held deeds of pews, in proportion to the sums paid by them. The referee, who tried the action, found as facts that there was no necessity for selling to pay debts, and that the sole object was to effect a distribution of the proceeds among a portion of the members ; and he declared that the order for the sale was void, " on account of the provision for the distribution of the proceeds among the pew owners." It nowhere appeared that any considerable number of the corporators, certainly not a majority, applied for the order. It is stated that several members of the society concurred, but it is evident from the statement of the case, that only a small portion of the members and a bare majority of the trustees consented to the application. The decision of the court follows and adopts the decision of the referee that there was no necessity for a sale to pay debts ; and that the division of the proceeds among the pew-holders was illegal, and rendered the order void. The decision, both of the referee and of the court, is based upon the fact that all the persons interested had not consented, and the learned judge says, " it was not in the power of the trustees, or a majority of the members, or of the court, to abolish the corporation or dissolve the society." But he seasonably adds, " if every individual having any interest in the matter should concur, it might be done."

As a decision, *Wheaton* v. *Gates* sustains these general propositions : That the statute confers no power upon the court, to control or manage the property of religious societies ; that the whole power of administration is conferred upon the trustees, with the single qualification, that before they can sell they must apply to the court for its allowance of the transaction, and to allow or disallow the application of the moneys to such purposes, as the corporation shall represent to be most for the interests of the

society. From these propositions, it follows, that upon an application for the sale of church property, the only duty of the court is to see—First, That sufficient reasons exist therefor, and Second, That a proper disposition of the proceeds is made, and the case decides nothing more. I have examined the case before us, upon strictly legal grounds, and have endeavored to show that the court had jurisdiction to make the order directing the plaintiffs to convey, and that the order was a proper one. It therefore becomes unnecessary to examine the other questions raised on the appeal. If I am right in the views I have expressed, it follows that the rejection of the evidence offered to establish the defence was erroneous, and the judgment for that reason should be set aside. But before concluding, I may be indulged, I hope, in a single suggestion in regard to another aspect of the case. The entire good faith of the parties who entered into this mutually beneficial agreement, cannot for a moment be questioned. The promptness with which they carried it into immediate effect, and the desire they manifested to complete, in a spirit of fairness, what they had undertaken to do, cannot fail to satisfy any one that the intentions of the parties were upright. The plaintiffs procured permission to convey, and delivered their deed. The defendants sold their property in Oliver street; came into the plaintiff's church and united with them, and as one congregation engaged in divine worship. Debts of the plaintiffs, amounting to upwards of fifty thousand dollars, were, in effect paid, and the corporate name of the Madison Avenue Baptist Church retained. So far the parties appear to have acted in strict accordance with their engagements. They came together in a spirit of fraternal love, and conformed to the faith and submitted to the discipline of the united church. Having done this—having gone thus far, it would seem as if a Christian spirit, if not a better judgment, should have counseled acquiescence and peace. Among men who do

not profess the Christian religion, moral obligations are not always recognized. With such, the compulsory power of the law alone has its terrors. But there is, nevertheless, or should be, a conscientious sense of right and justice, and of moral duty, which ought to control the actions of men, and influence them in the discharge of their obligations, even where the law exempts; and whatever may be the conceived legal rights of parties, if there is any moral duty unperformed, it should restrain them from the entanglements and consequences, always disastrous, of strife and litigation.

The judgment should be reversed, and a new trial ordered, with costs to the appellants on the appeal, to abide the event.

BARBOUR and GARVIN, JJ., concurred.